O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 06-2831 PSG (JTLx) | Date | December 17, 2009 |
|---|---|---|---|
| Title | Debra Letvinuck v. Aetna Life Insurance Company *et al.* | | |

| Present: | The Honorable Philip S. Gutierrez, United States District Judge |
|---|---|

| Wendy K. Hernandez | Not Present | n/a |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings:**    **(In Chambers) Order Finding For Defendants After Court Trial**

This is an action for benefits pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* A bench trial on the administrative record was held on December 15, 2009. Having considered the arguments and evidence presented, the Court finds for Defendants. This constitutes the findings of fact and conclusion of law required by Rule 52 of the Federal Rules of Civil Procedure.

I.    Findings of Fact

    A.    The Disability Plans

Plaintiff Debra Letvinuck ("Plaintiff") is a forty-nine-year-old woman employed by the Boeing Company as a Methods Analyst, a position that involves working on computers. (AR 00100-01.)

Defendant The Boeing Company Health and Welfare Benefit Plan ("Plan") is a plan that includes both Short-Term Disability ("STD") and Long-Term Disability ("LTD") benefit plans. (AR 00044-91.) Defendant Aetna Life Insurance Company ("Aetna") is the claims administrator for Boeing's STD plan, although Boeing funds the STD benefits. Aetna is also the administrator for Boeing's LTD plan, and Aetna itself funds the LTD plan.

In a section of the Plan titled "ERISA Claim Fiduciary," the Plan provides that

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 06-2831 PSG (JTLx) | Date | December 17, 2009 |
| --- | --- | --- | --- |
| Title | Debra Letvinuck v. Aetna Life Insurance Company *et al.* | | |

[f]or the purposes of section 503 of Title 1 of the Employee Retirement Income Security Act of 1974, as amended (ERISA), Aetna is a fiduciary with complete authority to review all denied claims for benefits under this policy.  In exercising such fiduciary responsibility, Aetna shall have discretionary authority to:

Determine whether and to what extent employees and beneficiaries are entitled to benefits; and

Construe any disputed or doubtful term of this policy.

Aetna shall be deemed to have properly exercised such authority unless Aetna abuses its discretion by acting arbitrarily and capriciously.

(AR 00021.)  Thus, under the explicit terms of the Plan, Aetna retains discretionary authority to review denied claims and make benefits determinations.

The parties do not dispute that Plaintiff was a covered employee under the Plan.  What they dispute is whether Aetna improperly terminated Plaintiff's STD benefits and improperly denied her LTD benefits.

### B.    Plaintiff's Claims for Short-Term and Long-Term Disability Benefits

Plaintiff, who suffers from multiple sclerosis ("MS"), made an STD claim on April 20, 2005.  (AR 00100, 00102, 00391.)  Plaintiff last worked a full day on April 28, 2005.  (AR 00102.)  Plaintiff's treating physician, neurologist Leslie Weiner, M.D., recommended that Plaintiff stay out of work on April 18, 2005 and that she not return to work for six months.  (AR 00105.)  Dr. Weiner did not give Plaintiff any specific limitation or restrictions other than that she stop work, and Plaintiff was aware of opportunities at her company to return to work with modified duties.  (AR 00106.)

In April 2005, Aetna requested information from Dr. Weiner's office regarding Plaintiff's condition, and Dr. Weiner's office advised Aetna that Plaintiff's estimated dates of disability were from April 18, 2005 and continuing for six months thereafter.  (AR 00115, 00119, 00121, and 00126.)  Dr. Weiner's office also advised Aetna that Plaintiff's diagnoses were optic neuritis, monocular diplopia, and headaches, with a fair prognosis; that Plaintiff could not function at her job due to lack of concentration, pain, and eye problems; and that Plaintiff was not a candidate for vocational rehabilitation or retraining.  (AR 00121-22.)  Dr. Weiner's office also advised Aetna that Plaintiff was receiving psychological therapy and evaluation.  (AR

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 06-2831 PSG (JTLx) | Date | December 17, 2009 |
|---|---|---|---|
| Title | Debra Letvinuck v. Aetna Life Insurance Company *et al.* | | |

00123.)

Aetna then called Boeing to confirm that Plaintiff's last day of work was April 28, 2005, although Dr. Weiner diagnosed her as of April 18, 2005. Boeing advised Aetna that Plaintiff's date of disability was April 29, 2005. (AR 00124-25.)

On May 2, 2005, Aetna certified Plaintiff's STD benefits through July 8, 2005. (AR 00133.) Aetna also requested that an Attending Physician Statement ("APS") be submitted to Aetna if Plaintiff remained disabled beyond July 8, 2005. Aetna sent Plaintiff an APS, questionnaires, and authorizations to complete and return, which Plaintiff did. (AR 00334-36.)

On May 17, 2005, Plaintiff's supervisor, Keith Eckland, prepared a Physical Demand Analysis describing Plaintiff's job. The Physical Demand Analysis stated that Plaintiff's job required no physical activities (such as climbing, kneeling, lifting or carrying), but involved sitting and fine manipulation, with occasional standing and walking. Plaintiff operated a computer the entire day, and her job did not require far vision or depth perception. The Physical Demand Analysis also stated that Plaintiff worked an eight-hour day, but that Boeing could accommodate a six- to eight-hour work day. (AR 00325.)

On June 22, 2005, Plaintiff forwarded to Aetna an APS completed by Dr. Weiner on June 20, 2005. The APS described Plaintiff and provided a diagnosis of relapsing/remitting MS with neuritis, numbness in legs, feet, and ankles, fatigue, and "mental impairment." The APS also listed Plaintiff's return to work date as October 28, 2005, with a return to full duty. Furthermore, the APS reflected that an MRI of Plaintiff's brain and spine was performed, but it did not report the objective results. (AR 00332-33.)

On June 23, 2005, Aetna reviewed the APS forwarded by Dr. Weiner and concluded that, based upon Dr. Weiner's treatment plan, it was appropriate to preclude a return to work by Plaintiff through August 15, 2005. (AR 00146.) On June 24, 2005, Aetna acknowledged receipt of certain of Plaintiff's medical records and advised Plaintiff that Aetna had certified STD benefits through August 15, 2005. (AR 00330-31.)

On August 4, 2005, Aetna called Plaintiff, who advised that she would not be returning to work on August 16, 2005. (AR 00151.)

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 06-2831 PSG (JTLx) | Date | December 17, 2009 |
|----------|------------------------|------|-------------------|
| Title | Debra Letvinuck v. Aetna Life Insurance Company *et al.* | | |

On August 15, 2005, Plaintiff forwarded to Aetna another APS completed by Dr. Weiner on August 12, 2005.  This APS again stated that Plaintiff's diagnosis was relapsing/remitting MS, with neuritis, extreme fatigue, "mental impairment," and numbness, and difficulty at higher cerebral function and hand-eye work.  The APS again listed Plaintiff's return to work date as October 28, 2005.  (AR 00328-29.)

Also on August 15, 2005, Plaintiff informed Aetna by telephone that Dr. Weiner estimated her return to work date as April 2006 and that he advised her that she was a viable candidate for vocational rehabilitation.  (AR 00154.)

On August 16, 2005, Aetna reviewed the APS from Dr. Weiner.  Aetna noted the APS's report that Plaintiff was having difficulty with "higher cerebral function."  The APS reflected that an MRI of Plaintiff's brain and spine was performed, but it did not report the objective results.  (AR 00156.)

On August 17, 2005, Aetna acknowledged receipt of Plaintiff's further medical documents and advised her that bi-weekly STD benefits were certified through September 30, 2005.  (AR 00326-27.)

On September 13, 2005, Plaintiff informed Aetna that she had to cancel her next doctor's appointment because she did not feel well.  Aetna's representative advised Plaintiff to make another appointment, and indicated that Aetna would continue processing Plaintiff's STD claim once Aetna received the results from her appointment.  (AR 00158.)

Also on September 13, 2005, Aetna's Nurse Care Manager, James Barger, requested Plaintiff's medical records from Dr. Weiner.  (AR 00531.)  Plaintiff transmitted her medical records to Barger on September 21, 2005.

C.     Plaintiff's Medical Records

Dr. Weiner's records show that he first saw Plaintiff at his neurology clinic on March 5, 2004.  At that time, Plaintiff complained of pain in her left eye since November 2003, "trouble with thinking," bladder difficulties, leg and arm pain and fatigue, vision problems, diarrhea, stress, weight gain, and depression related to her MS diagnosis from November 2003.  (AR 00322-23.)  Dr. Weiner conducted a physical examination, noted that Plaintiff's MRI confirmed

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-2831 PSG (JTLx) | Date | December 17, 2009 |
|----------|----------------------|------|-------------------|
| Title | Debra Letvinuck v. Aetna Life Insurance Company *et al.* | | |

a demyelinating process (MS), and advised Plaintiff to go to therapy and take Rebil and Betaseron, though Plaintiff opted for Copaxone. (AR 00497.) Dr. Weiner noted that Plaintiff's clinical symptoms had been stable since November 2003, and Dr. Weiner did not advise Plaintiff to stay off work. (AR 00496-97, 00156.)

On April 12, 2004, Dr. Weiner prepared an Interval History for Plaintiff. Dr. Weiner confirmed that Plaintiff's MS was relapsing/remitting, and stated that Plaintiff complained of some numbness in her hands and some difficulty with her left eye. (AR 00321.)

Dr. Weiner next saw Plaintiff on July 23, 2004. Plaintiff's MRIs showed that she had two gadolinium-enhancing lesions, but the rest of her lesions were stable and had not increased. Plaintiff complained of "higher cerebral function difficulty," and a battery of tests had been scheduled. (AR 00320.)

Dr. Weiner's records indicate that Dr. Alfredo Sadun saw Plaintiff on July 26, 2004 for a neuro-ophthalmology consultation. Dr. Sadun noted that Plaintiff had pain and decreased vision in her left eye. Dr. Sadun measured Plaintiff's eyesight as 20/15 and 20/20, and stated that Plaintiff had normal results from her optic nerve function, Amsler grid testing, orbital, neuropsych, neurological, facial neurological, slit-lamp, and tangent field examinations. Dr. Sadun concluded that Plaintiff's symptoms were consistent with having had MS, but that Plaintiff had no current inflammation, and Dr. Sadun did not need to see Plaintiff absent another attack. (AR 00485-87.)

Dr. Weiner next saw Plaintiff on October 22, 2004. Dr. Weiner stated that Plaintiff had neuropsych testing because of "high cerebral function difficulties," but that Plaintiff "has no evidence of any dementia and actually did spectacularly on the neuropsych testings." Dr. Weiner reported that Plaintiff had an unusual episode of monocular diplopia, fewer déjà vu episodes than previously, and some headaches, but that "overall, she is doing quite well." Dr. Weiner concluded that Plaintiff's "condition is stable, and we think that she is doing quite well from an emotional point of view as well." (AR 00319.)

Dr. Weiner next saw Plaintiff on April 18, 2005. Plaintiff complained of vision difficulties, but "her major difficulties complaint relate[d] to her higher cerebral functions." Dr. Weiner noted that Plaintiff had déjà vu episodes, but that her EEG was normal. Plaintiff's MRIs also showed that she had a considerable amount of disease in her brain, but that almost all of it

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 06-2831 PSG (JTLx) | Date | December 17, 2009 |
|---|---|---|---|
| Title | Debra Letvinuck v. Aetna Life Insurance Company *et al.* | | |

was around her corpus callosum, and that the lesions there and in her spine were unchanged. Dr. Weiner noted that the results of Plaintiff's examination were unchanged, and that Plaintiff had hyperreflexia. Of the forty-minute visit, over thirty minutes were spent discussing Plaintiff's "inability to function in her job." Dr. Weiner opined that Plaintiff was not doing well, had a marked degree of fatigue, and would benefit from a six-month disability and medical leave. (AR 00318, 00481-82.)

Dr. Weiner next saw Plaintiff on June 20, 2005. At that time, Dr. Weiner noted that Plaintiff had no spinal lesions, but had about thirty lesions in the deep white matter of her brain. (AR 00477-80.) Plaintiff's lesions were unchanged from her prior examinations. Dr. Weiner again noted that Plaintiff's major complaint related to her "higher cerebral functions." Dr. Weiner stated that Plaintiff had déjà vu episodes, but her EEG was normal. After a neurological examination, Dr. Weiner noted that Plaintiff had a slight pronator drift on the right, increased tone on the right, and was hyperreflexic, with a "positive Romberg." Finally, Dr. Weiner noted that Plaintiff was taking Copaxone, was clinically stable, but continued to be "cognitively disabled." (AR 00471.)

Plaintiff's records also contain a psychological Clinical Report from Deborah A. Spaine, Ph.D., following her sessions with Plaintiff on June 23, 2005 and July 21, 2005. Dr. Spaine noted that Plaintiff was in therapy for the previous seventeen years for panic attacks. Dr. Spaine's report also stated that Plaintiff had symptoms of Major Depression, felt hopeless about her marriage, had gained fifty pounds since quitting smoking, complained of memory loss, and that Plaintiff's marriage was troubled. The report also stated that Plaintiff had been advised to take antidepressants but refused. Finally, the report stated that Plaintiff's prognosis was fair, depending on Plaintiff's MS, and that her symptoms made it difficult for her to work efficiently and consistently. (AR 00519-20.)

Dr. Weiner next saw Plaintiff again on August 12, 2005. Dr. Weiner noted that Plaintiff had an extensive lesion in the deep white matter of her brain and as many as thirty lesions at that time, but that her motor examination and situation were unchanged. Dr. Weiner also noted that Plaintiff was hyperreflexic, with no Romberg and a normal gait. Dr. Weiner stated that Plaintiff's complaints related "to her higher cerebral function, and this ma[de] her disabled for her particular job." Dr. Weiner's report noted that Plaintiff was an engineer. Finally, Dr. Weiner noted that Plaintiff was continuing to take Copaxone, and Plaintiff and Dr. Weiner discussed what Plaintiff would need to do to be retrained. (AR 00469-70.)

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-2831 PSG (JTLx) | Date | December 17, 2009 |
|---|---|---|---|
| Title | Debra Letvinuck v. Aetna Life Insurance Company *et al.* | | |

Dr. Weiner saw Plaintiff again on October 31, 2005.  At that time, Dr. Weiner noted that Plaintiff was hyperreflexic, with no Romberg and a stiff gait.  Dr. Weiner further noted that Plaintiff's complaints related "to higher cerebral function."  Dr. Weiner stated that Plaintiff "continues to be disabled for her particular work."  (AR 00527-28.)

D.    Aetna's Processing of Plaintiff's Disability Claims After September 20, 2005

On September 20, 2005, Aetna conducted a review of Plaintiff's eligibility for LTD benefits as a participant in the Plan.  This included a review of Plaintiff's claims and treatment.  Aetna reviewed and summarized the several APSs submitted by Dr. Weiner, noting that an MRI of Plaintiff's brain and spine, an optic examination, and a neuropsychological exam were performed on Plaintiff, but that no results were reported.  Aetna concluded that it was reasonable to preclude Plaintiff's return to work until September 30, 2005, and Aetna further noted that Plaintiff's medical records should be ordered to ascertain the progression of her pathology.  (AR 00160-66.)

On September 21, 2005, Aetna spoke with Plaintiff, who advised that she would have Dr. Weiner submit additional documentation for Aetna's review.  (AR 00168.)  On September 22, 2005, Plaintiff called Aetna to confirm Aetna's receipt of her documents.  (AR 00172.)

On September 24, 2005, Aetna informed Plaintiff that her STD claim was being reviewed for LTD benefits, and that, if Plaintiff was eligible for LTD benefits, her LTD claim would be effective on October 28, 2005.  Aetna's letter advised Plaintiff of the applicable Plan requirements for LTD benefits, including the twenty-six-week waiting period.  (AR 00537-39.)  Aetna requested that Plaintiff fill out and return claim forms by October 14, 2005, including an APS.  (AR 00334-36.)

On September 26, 2005, Aetna reviewed the progress notes from Dr. Weiner and noted that Dr. Weiner did not report any objective results or findings that supported the opinion that Plaintiff was disabled due to problems with "higher cerebral function."  (AR 00174.)

On September 27, 2005, Aetna advised Plaintiff that it was waiting for further records from Dr. Weiner in order to evaluate her claim, and Plaintiff agreed to follow up with Dr. Weiner's office.  (AR 00175.)

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-2831 PSG (JTLx) | Date | December 17, 2009 |
|----------|----------------------|------|-------------------|
| Title | Debra Letvinuck v. Aetna Life Insurance Company *et al.* | | |

On October 7, 2005, Aetna advised Plaintiff that updated documentation was necessary if Plaintiff had not returned to work on October 1, 2005 as previously scheduled, and again advised Plaintiff that it was waiting for further records from Dr. Weiner.  Plaintiff informed Aetna that Dr. Weiner had received Aetna's request for further records, and that the records were in the mail.  (AR 00176.)

On October 17, 2005, Aetna called Dr. Weiner's office and requested clinically objective findings supporting Plaintiff's disability, such as neuropsychological studies or motor skills test results.  (AR 00180.)

On October 24, 2005, Aetna asked Plaintiff whether her doctor had sent Aetna his chart notes, and Plaintiff advised Aetna that he had not.  (AR 00183.)

On October 27, 2005, Dr. Weiner's office transmitted the report of Plaintiff's neuropsychological testing and assessment by Carol McCleary, Ph.D.  Dr. McCleary examined Plaintiff on August 30, 2004 and again on September 22, 2004.  Plaintiff complained about trouble with her memory, "word finding," and a decreased ability to multi-task.  The report noted that Plaintiff had no history of hypertension, diabetes, stroke, head injury, psychiatric problems, or learning disability, and Plaintiff reported that her job was "going well."  Dr. McCleary observed that Plaintiff showed "no evidence of word finding difficulties" or comprehension difficulties, and that her attention and concentration were good.  Following testing, Dr. McCleary summarized Plaintiff's test results by stating that Plaintiff had superior verbal abilities, high average to average intelligence measurements, and strong language, strong verbal memory, strong ability to learn and recall, and strong mental tracking skills, with age appropriate "visuoconstructional" skills.  Dr. McCleary summarized Plaintiff's results as follows:  "The neuropsychological protocol failed to demonstrate any impaired cognitive domains."  (AR 00551-56.)

Dr. McCleary also noted that Plaintiff denied feeling anxious or depressed, but was emotionally distressed with concerns about her symptoms, and Dr. McCleary recommended that Plaintiff consider psychotherapy.  (AR 00556-57.)

On October 31, 2005, Aetna referred the claim to a medical consultant for review to determine if Plaintiff's reported job limitations and restrictions were supported by the available medical evidence.  (AR 00188-89.)

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-2831 PSG (JTLx) | Date | December 17, 2009 |
|---|---|---|---|
| Title | Debra Letvinuck v. Aetna Life Insurance Company *et al.* | | |

On November 1, 2005, Aetna sent Plaintiff a letter advising Plaintiff that Aetna had initiated its review of Plaintiff's claim for LTD benefits and was extending the period to determine Plaintiff's claim by thirty days, or until November 30, 2005. (AR 00536.)

Also on November 1, 2005, Plaintiff forwarded an APS Dr. Weiner had completed on October 31, 2005. The APS stated that Plaintiff had a diagnosis of relapsing/remitting MS with significant "impairment" that affects decision-making, thought patterns, and hand/eye coordination. The APS listed Plaintiff's prognosis as "guarded," estimated Plaintiff's return to work date as "other occupation," and stated that Plaintiff was a viable candidate for "vocation rehabilitation (job retraining)." (AR 00560-62.)

E.    Plaintiff's STD Benefits Are Terminated Effective September 30, 2005

On November 8, 2005, per Aetna's request, occupational medicine specialist Dr. Brent Burton conducted a review of Plaintiff's disability claim, including her examinations by Dr. Weiner and her neuropsychological testing by Dr. McCleary. Dr. Burton noted Plaintiff's reports of cognitive problems but also Dr. McCleary's conclusion that the neuropsychological "testing failed to demonstrate any impaired cognitive domains." Dr. Burton concluded that, although Dr. Weiner described symptoms of MS, neither the initial examination performed by Dr. Weiner nor the follow-up examinations identified any significant neurological abnormalities regarding Plaintiff's "functional capacities." Dr. Burton noted that Dr. McCleary's neuropsychological assessment revealed no evidence of cognitive dysfunction, and no follow-up tests were ordered. Dr. Burton concluded that Dr. Weiner authorized disability benefits inconsistent with objective test results. Dr. Burton also concluded that Dr. Weiner had not provided any data from which a conclusion of measurable cognitive impairment affecting her work could be reached and that, as a result, Plaintiff should not be precluded from resuming her job. (AR 00195-205.) Accordingly, Dr. Burton concluded that the medical records did not support a finding that Plaintiff was impaired.

On November 8, 2005, Aetna sent Plaintiff a detailed letter advising Plaintiff that her STD benefits were being terminated because there was a lack of information showing that Plaintiff could not perform the material functions of her occupation, as "disability" is defined in the Plan. The letter summarized portions of Plaintiff's medical records and stated that, although she had been diagnosed with MS, the medical records and her attending physician did not identify any neurological abnormalities affecting her functional capacity at work. The letter also

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-2831 PSG (JTLx) | Date | December 17, 2009 |
|---|---|---|---|
| Title | Debra Letvinuck v. Aetna Life Insurance Company *et al.* | | |

advised Plaintiff that her claim for LTD benefits was also being denied because she had not completed the twenty-six-week waiting period for LTD benefits. Finally, the letter advised Plaintiff that Aetna would review and consider any additional information provided by Plaintiff or her physician. (AR 00540-44, 00206-216.)

On November 14, 2005, Aetna sent Plaintiff another letter reiterating that her claim for LTD benefits was being denied because her STD benefits were terminated as of September 30, 2005, and therefore she had not completed the twenty-six-week waiting period to qualify for LTD benefits. This letter also advised Plaintiff that Aetna would consider any further information she or her doctor could provide. (AR 00386-89.)

F.      Plaintiff's Appeal of the Termination of Her STD Benefits

On November 8, 2005, Aetna placed a telephone call to Plaintiff to advise her that her claim for LTD benefits was being denied, and Plaintiff responded by advising Aetna that additional clinical records would be sent. Plaintiff faxed a letter to Aetna advising it that she wished to appeal the denial of her LTD claim. (AR 00559, 00217-20.)

On November 17, 2005, Aetna acknowledged Plaintiff's appeal and invited Plaintiff to submit any additional information relevant to her claim. (AR 00373, 00238-40.)

On December 5, 2005, Plaintiff sent a letter to Aetna in response to Aetna's determination of her LTD and STD benefits claims. Plaintiff's letter claimed that Aetna did "not hav[e] most of my medical records" and stated that Plaintiff disagreed with Aetna's determination of her claims. Plaintiff enclosed previously provided medical records from Dr. Weiner, Dr. Sadun, and Dr. Spaine, and Plaintiff requested a complete copy of Plaintiff's file. (AR 00523-26.)

On December 9, 2005, Plaintiff spoke with Aetna and requested additional time to provide Aetna with information on her appeal. (AR 00242.) Also on December 9, 2005, Aetna sent Plaintiff a letter extending Plaintiff's time until January 8, 2006 to provide Aetna with additional information on her appeal, and stating that Aetna would suspend its review until Plaintiff's further information was received. (AR 00372, 00243-44.)

On December 29, 2005, Plaintiff sent Aetna a letter enclosing letters from Dr. Weiner and Dr. Spaine, along with a Notice of Award from the Social Security Administration, and

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-2831 PSG (JTLx) | Date | December 17, 2009 |
|---|---|---|---|
| Title | Debra Letvinuck v. Aetna Life Insurance Company *et al.* | | |

requested that Aetna begin its review of her benefits claim. (AR 00393.) Dr. Weiner's letter, dated December 19, 2005, described the cognitive impairment that is generally manifested with MS and opined that Plaintiff "was disabled with regard to her job requirements." (AR 00395.) Dr. Spaine's letter was a December 12, 2005 "Clinical Update" written at Plaintiff's request, and it stated that Plaintiff continued to suffer from various symptoms, some of which are related to her MS. The letter states that Plaintiff's stress over "financial concerns and pursuit of her options" increased her depression and exhaustion. The letter further opined that her symptoms made it "impossible" to return to work. (AR 00396.) The Notice of Award from the Social Security Administration stated that Plaintiff was entitled to monthly disability benefits beginning in October 2005, but it does not contain any specific information about Plaintiff's condition or the Social Security Administration's determination of her disability. (AR 00397-399.) Finally, Plaintiff's letter confirmed that she had spoken with Aetna's appeal analyst Maryanne Barry on December 9, 2005 regarding her claim. (AR 00393.)

On January 5, 2006, Aetna sent a letter to Plaintiff advising that Plaintiff's additional medical records had been forwarded to Aetna's medical director for review. Aetna also forwarded a complete copy of Plaintiff's file, as requested. (AR 00371.)

On January 11, 2006, Aetna sent a letter to Plaintiff providing notice that the deadline for a final decision was extended forty-five days because of the additional medical information that had been forwarded to Aetna's medical director for review. (AR 00370.)

Also on January 11, 2006, board-certified occupational medicine specialist Dr. Robert N. Anfield issued a report on his "Clinical Referral/Review" in connection with Plaintiff's appeal of Aetna's benefits determination. All records submitted by Plaintiff had been reviewed by Dr. Anfield, and his report reviewed all Plaintiff's physicians' diagnoses and medical treatments, noting that Plaintiff had documented stress from work, her long commute, the disruption of her support network following a work transfer, and her marriage. (AR 00366-68.)

Dr. Anfield noted that Dr. Weiner's initial Mental Status Examination ("MSE") found Plaintiff "appropriate with . . . normal mental status . . . no evidence of asphasia or dysarthria" on March 5, 2004, but was not well documented. Dr. Anfield further noted that Dr. Weiner's three later notations that Plaintiff complained of "higher cerebral function" problems were not supported by any appropriate documentation of MSEs either.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 06-2831 PSG (JTLx) | Date | December 17, 2009 |
|---|---|---|---|
| Title | Debra Letvinuck v. Aetna Life Insurance Company *et al.* | | |

Dr. Anfield also noted that Dr. Spaine's records likewise contained no documentation of an MSE to support her conclusions.  Finally, Dr. Anfield noted that the most thorough assessment of Plaintiff's cognitive ability was Dr. McCleary's neuropsychological assessment in August and September 2004, in which, after testing Plaintiff, Dr. McCleary concluded, "The neuropsychological protocol failed to demonstrate any impaired cognitive domains."  Based on the diagnoses in Plaintiff's records, Dr. Anfield concluded that "[i]n the face of the neuropsychological assessment, there is no explanation as to why Ms. Letvinuck continued to be absent from work or how Dr. Weiner could sustain subsequent conclusions about Ms. Letvinuck's cognitive functioning without repeat neuropsychological testing (that included measures of validity)."  Dr. Anfield also noted that while Plaintiff had depressive symptoms, there was no MSE or other documentation to support a conclusion that her mental health precluded her from working.  (AR 00366-68.)

On January 19, 2006, Plaintiff transmitted a letter from her therapist Dr. Spaine, enclosing her clinical notes from Plaintiff's therapy from June 1, 2005 to December 13, 2005.  The notes include Plaintiff's complaints to Dr. Spaine about Aetna's denial of Plaintiff's claims and Dr. Spaine's opinion that Aetna's processing of Aetna's claim "is a game for them . . . their sole purpose is to keep the money.  They play this game all day every day[.]"  The notes did not include the results of an MSE or other objective tests regarding Plaintiff's mental condition.  (AR 00378-85.)

On January 25, 2006, board-certified psychiatrist Dr. Mark Schroeder issued another report for Aetna, a "Clinical Referral/Review," in connection with Plaintiff's appeal of Aetna's benefits determination.  Dr. Schroeder's review was performed to determine if Plaintiff's ability to perform her job was impaired due to depression.  (AR 00363-365.)

Dr. Schroeder noted Dr. Spaine's and Dr. Weiner's opinions that Plaintiff could not work because of her self-reported cognitive dysfunction due to multiple sclerosis, but that Dr. Spaine's and Dr. Weiner's records did not contain detailed MSEs or neuropsychological tests supporting their opinions.  Dr. Schroeder noted that the neuropsychological testing in the records, from September 22, 2004, reported no abnormalities on the MSE and no evidence of cognitive impairment from the tests performed.  Dr. Schroeder noted Dr. Spaine's diagnosis of major depressive disorder, but that the records did not contain clinical findings supporting job impairment due to depression, existence of severe psychiatric symptoms, or specific psychiatric impairments in performing daily activities.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-2831 PSG (JTLx) | Date | December 17, 2009 |
|---|---|---|---|
| Title | Debra Letvinuck v. Aetna Life Insurance Company *et al.* | | |

Dr. Schroeder's report concluded that although Plaintiff self-reported "depression and cognitive impairment due to Multiple Sclerosis," the specific, detailed, and objective information in the file did not corroborate, but contradicted, these self-reports. Dr. Schroeder also concluded that Plaintiff's reporting of significant work-related stress raised the question of whether her absence might be due in part "to avoidance of a job perceived as stressful," and that the majority of the evidence did not support psychiatric impairments on Plaintiff's job performance as of October 1, 2005. (AR 00363-365.)

G.   Denial of Plaintiff's Appeal

On February 1, 2006, Aetna sent Plaintiff a detailed letter advising her that Aetna had reviewed Plaintiff's STD claim and determined that the decision to terminate STD benefits was appropriate. The medical documents Plaintiff provided did not support an inability to perform her occupation, as there was no clinical information that supported her complaints of cognitive abilities, and the diagnostic tests performed did not reveal total disability or the inability to perform the material function of her work as defined under the Plan. The letter also advised Plaintiff that she had a right to bring an action against Aetna under Section 502(a) of ERISA. (AR 00374-76.)

H.   Procedural History of Plaintiff's Civil Action

On May 10, 2006, Plaintiff instituted an ERISA action in this Court against Aetna and the Plan, alleging that Defendants improperly terminated Plaintiff's STD benefits and improperly denied her LTD benefits. After a bench trial on August 21, 2007, the Court ruled in favor of Defendants. Plaintiff appealed that decision to the United States Court of Appeals for the Ninth Circuit.

In its review, the Ninth Circuit observed that this Court's Conclusions of Law indicated that the Court was required to uphold Aetna's decision if there was "any reasonable basis for it," a standard of review that did not survive *Abatie v. Alta Health & Life Ins. Co.,* 458 F.3d 955 (9th Cir. 2006). *See Letvinuck v. Aetna Life Insur. Co.,* No. 07-56594, at 2 (9th Cir. March 18, 2009). The Ninth Circuit also found that this Court "did not sufficiently consider certain of Aetna's other failures, which would affect the skepticism to be used by the court in its review." *Id.* In particular, the Ninth Circuit showed concern that "Aetna did not clearly inform Letvinuck that it needed further objective neurological testing evidence before it could be convinced that she had

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-2831 PSG (JTLx) | Date | December 17, 2009 |
|---|---|---|---|
| Title | Debra Letvinuck v. Aetna Life Insurance Company *et al.* | | |

a cognitive disability due to her multiple sclerosis," *see id.*, and that Aetna "essentially ignored" Plaintiff's receipt of Social Security disability benefits. *See id.* at 3. While allowing that the foregoing issues might "not make any difference in this case," the Ninth Circuit nevertheless vacated and remanded so that this Court could "properly apply the *Abatie* standard and clearly consider Aetna's conflict of interest, without imposing undue burdens upon Letvinuck." *See id.* at 3-4.

II.     Conclusions of Law

        A.     Standard of Review

        When examining an ERISA plan administrator's denial of benefits, the standard of review employed by district courts depends first on whether the plan at issue conferred discretion on the plan administrator to determine a participant's eligibility for benefits or to interpret the terms of the plan. *See Abatie v. Alta Health & Life Ins. Co.,* 458 F.3d 955, 963 (9th Cir. 2006) (en banc). If there is no such discretion in the plan, the administrative decision is reviewed *de novo. Id.* If discretion is conferred, the administrator's decision is reviewed for abuse of discretion. *Id.*

        Abuse of discretion standard of review applies even if the administrator has a conflict of interest. *Id.* at 965. An insurer who acts as both the plan administrator and the funding source for benefits operates under a structural conflict of interest. *Id.* When faced with a conflict of interest, courts must consider the conflict as a factor in abuse of discretion review, considering all the facts and circumstances to determine the plausibility of the plan administrator's reason for denying coverage. *Id.* at 968-69. Generally, a court can view technical conflicts of interest unaccompanied by evidence of something more with a low level of skepticism. *Id.* at 968. A court may view with greater skepticism a benefits denial by an administrator with a conflict of interest accompanied by shifting explanations for denial, evidence of malice, self-dealing, failure to adequately investigate or ask the plaintiff for necessary evidence, or failure to credit a claimant's reliable evidence. *Id.*

        In general, "a district court may review only the administrative record when considering whether the plan administrator abused its discretion, but may admit additional evidence on de novo review." *Id.* at 970. But in cases where there is a conflict of interest, "a district court may, in its discretion, consider evidence outside the administrative record to decide the nature, extent, and effect on the decision-making process of any conflict of interest." *Id.* Nevertheless, "the

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-2831 PSG (JTLx) | Date | December 17, 2009 |
|----------|----------------------|------|-------------------|
| Title | Debra Letvinuck v. Aetna Life Insurance Company *et al.* | | |

decision on the merits . . . must rest on the administrative record once the conflict (if any) has been established, by extrinsic evidence or otherwise."  *Id.* at 970 (citations omitted).

Here, the Court determines that an abuse of discretion standard applies because the Plan expressly provides that Aetna, as plan administrator, "shall have discretionary authority to . . . determine whether and to what extent employees and beneficiaries are entitled to benefits . . . and construe any disputed or doubtful terms of this policy."  (AR 00021.)

B.     Discussion

It is undisputed that Plaintiff was given STD benefits from April 29, 2005 through September 30, 2005.  (AR 00124-25, 00386-89.)  Plaintiff's case rests on her claim that her STD benefits were improperly terminated for the period after September 30, 2005 and that she was denied LTD benefits because she failed to satisfy the twenty-six-week waiting period for LTD benefits.

Thus, the termination of Plaintiff's STD benefits is tied together with the denial of Plaintiff's LTD benefits.  Plaintiff presents the same arguments with regard to the termination of her STD benefits and the denial of her LTD benefits, while Defendant provides the same reasons for its termination of her STD benefits and the denial of her LTD benefits.  The Court will therefore consider the parties' arguments as addressing both termination of STD benefits and denial of LTD benefits simultaneously.

1.     Conflict of Interest

Because Aetna both funds and administers LTD benefits under the Plan, Aetna operates under a structural conflict of interest.  In light of this structural conflict of interest, Plaintiff argues that this Court should review Aetna's denial of plan benefits with a high degree of skepticism for three reasons.  First, Plaintiff argues that Aetna's termination of her benefits for lack of objective medical evidence was improper because Aetna did not clearly inform Plaintiff of the need for such evidence.  Second, Plaintiff argues that Aetna improperly dismissed the significance of Plaintiff's award of disability benefits from the Social Security Administration ("SSA").  Finally, Plaintiff claims that Aetna's reviewing physicians made their decisions based on incomplete information.  For the reasons that follow, the Court is not persuaded.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 06-2831 PSG (JTLx) | Date | December 17, 2009 |
|---|---|---|---|
| Title | Debra Letvinuck v. Aetna Life Insurance Company *et al.* | | |

> a.   Whether Aetna Clearly Informed Plaintiff of the Need for Objective
> Medical Evidence

Plaintiff claims that Aetna did not clearly request objective evidence supporting her complaints of cognitive impairment, either from her or from her physicians. That Aetna cited the lack of such evidence as a basis for its denial of benefits therefore demonstrates, according to Plaintiff, that Aetna's decision was motivated by a conflict of interest. The Ninth Circuit has also urged this Court to consider whether Aetna's conduct on this point warrants higher skepticism.

The Court begins by noting that Aetna did not dispute Plaintiff's diagnosis of MS, which was supported by the MRI results that were forwarded to Aetna. Aetna did, however, clearly inform Plaintiff and her doctors that it needed objective medical evidence to support Plaintiff's complaints of disabling cognitive impairment.[1] In fact, on October 17, 2005, during its review of Plaintiff's STD benefits claim, Aetna called Dr. Weiner's office directly to request clinically objective findings supporting Plaintiff's disability claim, such as neuropsychological studies or motor skill levels. (AR 00180.) Further, in its November 8, 2005 letter informing Plaintiff that her STD benefits had been terminated, Aetna reviewed Plaintiff's medical records in detail and pointed out what was lacking. For instance, Aetna explained that "Dr. Weiner has provided absolutely no data from which a conclusion can be made that you are suffering from any measurable cognitive impairment that would adversely affect your ability to work." (AR 00548.) And, again: "In the absence of clinical findings which would be indicators of a severe impairment, we find that the evidence does not support disability as defined by your group policy." *Id.* Aetna then detailed in plain language the sort of evidence Plaintiff would need to submit to perfect her claim on appeal:

> If you request a review, it would be helpful if you submitted the type of additional medical information, as noted above. Specifically, clinical findings and test results that indicate that your condition is of the severity that would impair you from performing your occupation.

---

[1] While Plaintiff was diagnosed with MS in November 2003, she did not claim to be disabled until April 2005.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 06-2831 PSG (JTLx) | Date | December 17, 2009 |
|---|---|---|---|
| Title | Debra Letvinuck v. Aetna Life Insurance Company *et al.* | | |

*Id.* Aetna then reiterated that it was willing to review any additional information that Plaintiff or her treating physicians felt was pertinent to her claim, including "[a] detailed description of your functional impairments and restrictions, with evidence to support those limitations" and "[a] detailed explanation of how the severity of your condition is documented, other than by subjective complaints." *Id.*

Further, Aetna noted that the objective medical evidence in Plaintiff's file was inconsistent with Plaintiff's claim of cognitive disability. Specifically, in his November 8, 2005 review of Plaintiff's file, Dr. Burton observed that Dr. McCleary's August and September 2004 neuropsychological assessment revealed completely normal findings, with no evidence of any cognitive dysfunction, and that Dr. McCleary's objective test results were "completely inconsistent" with Dr. Weiner's assertion that Plaintiff suffered from cognitive disability. (AR 00203-04.) Notably, Dr. McCleary's tests were performed after Plaintiff had begun to complain to Dr. Weiner of cognitive impairment. (AR 00320.) More notably, Dr. McCleary's report was forwarded to Aetna by Dr. Weiner himself, in response to Aetna's October 17, 2005 telephone call requesting objective evidence of Plaintiff's cognitive complaints, and at no time did Dr. Weiner indicate that Dr. McCleary's test results were out of date or otherwise unreliable. (AR 00551-58.)

Finally, the Court notes that Aetna's communications to Plaintiff regarding the need for objective medical evidence supporting her claim of cognitive disability were not marked by the opacity and tardiness that characterized the plan administrator's deficient communications in *Saffon v. Wells Fargo & Co. Long Term Disability Plan,* 522 F.3d 863 (9th Cir. 2008). In *Saffon*, the Ninth Circuit reiterated that ERISA regulations call for "a meaningful dialogue" between claims administrators and beneficiaries. *See Saffon*, 522 F.3d at 870. Thus, in resolving a claim for benefits, a plan administrator must give the claimant a description of any additional material or information necessary to perfect the claim and must do so "in a manner calculated to be understood by the claimant." *See id.* In *Saffon*, the Ninth Circuit found that the plan administrator failed to observe these requirements because it did not clearly communicate what information was needed to perfect the beneficiary's claim until it was too late for the beneficiary to do anything about it. *See id.* at 871. Here, by contrast, the Court finds that Aetna's November 8, 2005 letter to Plaintiff was sufficiently clear and timely in describing the sort of evidence Plaintiff would need to submit to perfect her claim on appeal. (AR 00548.)

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 06-2831 PSG (JTLx) | Date | December 17, 2009 |
|----------|------------------------|------|--------------------|
| Title | Debra Letvinuck v. Aetna Life Insurance Company *et al.* | | |

The Court therefore finds that Aetna adequately informed Plaintiff of what was needed to perfect her claim, and that to the extent there was any failure by Aetna on that point, the failure was minor to insubstantial and does not warrant anything less than broad deference by this Court to Aetna's ultimate decision. *See Abatie,* 458 F.3d at 972 ("When an administrator can show that it has engaged in an ongoing, good faith exchange of information between the administrator and the claimant, the court should give the administrator's decision broad deference notwithstanding a minor irregularity.") (internal quotations omitted).

### b.     Whether Aetna Improperly Disregarded Plaintiff's SSA Award

In reviewing Plaintiff's claim on appeal, Aetna noted that although Plaintiff's file indicated that she had been approved for Social Security Disability Benefits, "the data and analysis on which [the] SSA relied is not available in the record." (AR 00368.) Plaintiff argues that Aetna should have obtained those records before making its decision. The Ninth Circuit, for its part, has indicated that this Court should evaluate whether Aetna failed to consider Plaintiff's SSA award in a manner that should affect the skepticism to be used by the Court in its review.

The Court notes that Aetna requested that Plaintiff provide all documents available to aid Aetna in making an informed benefits determination. Thus, Aetna could have reasonably assumed that any information submitted to the SSA was also submitted to Aetna. Notably, too, Plaintiff was fully aware of the contents of her file on appeal—including whether it lacked any information submitted to the SSA—as Aetna provided Plaintiff with a complete copy of her records on January 6, 2005, a point at which Plaintiff was still able to supplement the contents of her file. (AR 00371, 00378-85.)

Moreover, Aetna was not bound by the SSA's determination of benefits. *See Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 830-34, 123 S. Ct. 1965, 1970-72, 155 L. Ed. 2d 1034 (2003). Indeed, Aetna was obligated to make its own benefits determination, regardless of any decision from the SSA. Aetna's determination in this case was based on the lack of objective evidence supporting Plaintiff's complaint of disabling cognitive impairment, which Aetna plainly and timely communicated to Plaintiff and her physicians.

Plaintiff suggests that under *Montour v. Hartford Life & Accident Insur. Co.*, 2009 U.S. App. LEXIS 25538 (9th Cir. amended November 19, 2009), plan administrators are obligated to ask for the data and analysis upon which the SSA relied in making its disability benefits

**O**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 06-2831 PSG (JTLx) | Date | December 17, 2009 |
|---|---|---|---|
| Title | Debra Letvinuck v. Aetna Life Insurance Company *et al.* | | |

determination. *Montour* says no such thing. Rather, *Montour* states that "regulations promulgated by the Secretary of Labor authorize, if not require, plan administrators working with an apparently deficient administrative record to inform claimants of the deficiency and to provide them with an opportunity to resolve the problem by furnishing the missing information." *Montour,* 2009 U.S. App. LEXIS 25538 at *32. Aetna, as noted, did inform Plaintiff of the deficiencies on which Aetna's decision was based and provided her ample opportunity to furnish that missing information.

In *Montour*, moreover, the court held that the plan administrator's failure to consider the claimant's SSA award was only one of several factors that ultimately led the court to conclude that the administrator's conflict of interest improperly motivated its decision to terminate the claimant's benefits. Other factors included the district court's determination that "signs of bias" were exhibited throughout the administrator's decision-making process, the fact that the administrator's nurse case manager took an advocacy position in her communications with the claimant's doctors, and the administrator's decision to conduct a "pure paper" review of the claimant's case that failed even to mention the claimant's SSA award. None of these factors is present here.[2]

The circumstances of this case are also readily distinguishable from those in *Metro. Life Ins. Co. v. Glenn,* 128 S. Ct. 2343, 171 L. Ed. 2d 2999 (2008). In that case, the Supreme Court affirmed the Sixth Circuit's decision to set aside an administrator's discretionary denial of benefits, a decision the Sixth Circuit based on a combination of factors, including the fact that the plan administrator, who operated under a structural conflict of interest, failed to consider the claimant's award of disability benefits from the SSA. *See Glenn,* 128 S. Ct. at 2352; *Glenn v. Met Life,* 461 F.3d 660, 665-69 (6th Cir. 2006). The Supreme Court observed, however, that

---

[2] While Aetna's review was a "pure paper" review in the sense that it did not include a physical examination, it did not ignore Plaintiff's SSA award. Unlike the review in *Montour*, which did not even mention the claimant's SSA award, "not even to discount or disagree with it," *see Montour* 582 F.3d at 944 (internal quotations omitted), Aetna's review acknowledged Plaintiff's SSA award and explained why it was not being considered further. Thus, this Court does not share the *Montour* court's concern that the plan "may not have even been aware of" the claimant's SSA award, a concern the *Montour* court credited with "rais[ing] questions about the thoroughness and accuracy of the benefits determination." *See id.* at 944 (internal quotations omitted).

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 06-2831 PSG (JTLx) | Date | December 17, 2009 |
|---|---|---|---|
| Title | Debra Letvinuck v. Aetna Life Insurance Company *et al.* | | |

[i]n particular, the court found questionable the fact that [the administrator] had encouraged Glenn to argue to the Social Security Administration that she could do no work, received the bulk of the benefits of her success in doing so (the remainder going to the lawyers it recommended), and then ignored the agency's finding in concluding that Glenn could in fact do sedentary work. This course of events was not only an important factor in its own right (because it suggested procedural unreasonableness), but also would have justified the court in giving more weight to the [structural] conflict (because [the administrator's] seemingly inconsistent positions were both financially advantageous).

*Glenn,* 128 S. Ct. at 2352. Here, while the Plan did require Plaintiff to apply for SSA benefits, Aetna did not actively encourage Plaintiff to do so, offered her no guidance in doing so, and did not receive any benefits from her award. In other words, unlike the plan administrator in *Glenn*, Aetna did not take "seemingly inconsistent positions [that] were both financially advantageous," such as might warrant a heightened skepticism in reviewing Aetna's decision.

In sum, even assuming Aetna should have given further consideration to Plaintiff's SSA award, nothing about Aetna's failure to do so suggests to this Court that Aetna's decision-making was motivated by a conflict of interest or that Aetna's ultimate determination should be viewed with enhanced skepticism.

> c.    Whether Aetna's Decision Was Based on Incomplete Information

Plaintiff also argues that Aetna's decision should be given low deference because Aetna's reviewing physicians were given incomplete information. Specifically, Plaintiff claims that the reviewing physicians lacked a description of Plaintiff's occupational duties, which Plaintiff describes as requiring "high cognitive abilities." The Court disagrees.

First, the record before Aetna's reviewing physicians on appeal did in fact contain descriptions of Plaintiff's occupational duties. (AR 00367.) For example, Plaintiff's letter of December 5, 2005 in support of her formal request for an appeal of Aetna's decision described how for the previous ten years Plaintiff had "worked directly with all levels of management, including executives" of Boeing, how "millions of dollars in fee[s] were dependent on [her] data," how she "supported a 747 Aircraft Program," and how as a methods analyst she was required to "develop metrics." (AR 00400-403.) The record also contained a "Work History

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-2831 PSG (JTLx) | Date | December 17, 2009 |
|----------|----------------------|------|-------------------|
| Title | Debra Letvinuck v. Aetna Life Insurance Company *et al.* | | |

and Education Questionnaire" in which Plaintiff described other aspects of her duties as a methods analyst. (AR 00346.)

Moreover, Aetna's reviewing physicians provided reasons for termination and denial of benefits that did not require Plaintiff's job description. Specifically, Aetna's physicians noted that Plaintiff's physicians made diagnoses and recommendations without objective evidence to support their conclusions. Aetna's physicians opined that Plaintiff did not sufficiently support her claim of cognitive impairment, stating that "[i]n the face of the neuropsychological assessment [conducted by Dr. McCleary], there is no explanation as to why Ms. Letvinuck continued to be absent from work." (AR 00367-68.) The Court therefore rejects Plaintiff's argument that Aetna's decision should be given low deference.

d.   Plaintiff's Request That the Court Consider Extrinsic Evidence

Finally, Plaintiff has requested that the Court exercise its discretion to "consider evidence outside the Administrative Record to decide the nature, extent, and effect on the decision-making process of Aetna's structural conflict of evidence." *See Abatie,* 458 F.3d at 970. Specifically, Plaintiff has submitted deposition testimony from two of Aetna's reviewing physicians, Drs. Burton and Schroeder. That testimony, which was taken in other, unrelated lawsuits, supposedly demonstrates that Drs. Burton and Schroeder have little experience treating Multiple Sclerosis and that they derive a significant portion of their income from performing medical reviews for Aetna. Plaintiff also submits a May 2009 Reuters Internet article indicating that another of Aetna's reviewing physicians, Dr. Anfield, has "served in clinical leadership roles at insurers Aetna and Unum and was corporate medical director at GENEX Services, an insurance service provider."

The Court has considered this evidence, and finds that it does not warrant reviewing Aetna's decision with enhanced skepticism. That Drs. Burton and Schroeder have made their living, at least in part, reviewing claims for Aetna proves little. Aetna would likely be hard pressed to find someone to review its claims for free. Nor does the Court find it particularly relevant whether Drs. Burton and Schroeder have experience treating MS patients, since Aetna's principal reason for denying Plaintiff's claim was her failure to respond to Aetna's timely request for objective evidence of her functional impairment, such as neuropsychological test results or MSEs. Finally, the Court does not find Dr. Anfield's previous service "in clinical leadership roles" at Aetna and other insurance service providers to be evidence of a conflict of

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 06-2831 PSG (JTLx) | Date | December 17, 2009 |
|---|---|---|---|
| Title | Debra Letvinuck v. Aetna Life Insurance Company *et al.* | | |

interest at work in Aetna's decision to deny Plaintiff's claim.

For the foregoing reasons, then, the Court finds that the circumstances of this case do not indicate that Aetna's structural conflict of interest improperly motivated its decision to deny Plaintiff's benefits.[3]  The Court, then, proceeds to review Aetna's decision with broad deference under the abuse of discretion standard.

### 2.    Whether Aetna Abused Its Discretion

In short, the evidence in the record points both toward and against a finding of disability. To be sure, Plaintiff has presented evidence from her treating physicians indicating that she suffered cognitive difficulties related to her MS.  Aetna, however, has called into question the validity of that evidence, for reasons already noted.  Aetna also plainly communicated its concerns about that evidence to Plaintiff in time for her to address them.  Moreover, Aetna pointed to evidence from one of Plaintiff's own treating physicians indicating that neuropsychological testing done on Plaintiff failed to show cognitive disability.[4]

The Court therefore determines that Aetna reasonably relied on the opinions of both its reviewing physicians and Plaintiff's own doctors, communicated fully with Plaintiff, and reasonably construed the terms of the Plan.  Accordingly, the Court holds that Aetna did not abuse its discretion by denying Plaintiff's claim for short-term and long-term disability benefits.

### III.   Conclusion

---

[3] At trial, Plaintiff argued that Aetna's failure to offer "affirmative evidence of neutrality" further demonstrates that its claims decision was motivated by a conflict of interest.  The Court notes, however, that Aetna is not required to offer such evidence.  Rather, the Ninth Circuit has indicated that plans "facing closer scrutiny . . . may find it advisable" to offer such evidence. *See Abatie,* 458 F.3d at 969.  The Court determines that, under the circumstances of this case, Aetna's purported failure to offer "affirmative evidence of neutrality" does not warrant an enhanced skepticism in reviewing Aetna's decision.

[4] Plaintiff has requested that the Court review extrinsic evidence relating to an explanation of Global Functioning Scores and Aetna's claims guidelines.  The Court has done so, and determines that the information does not alter the Court's view regarding Aetna's conflict of interest or whether Aetna abused its discretion in denying benefits.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 06-2831 PSG (JTLx) | | Date | December 17, 2009 |
|---|---|---|---|---|
| Title | Debra Letvinuck v. Aetna Life Insurance Company *et al.* | | | |

For the reasons stated above, the Court finds for Defendants.

**IT IS SO ORDERED.**